## ELLIS v. THE STATE INS. CO.

1. **Appeal to Supreme Court:** FORCE OF DECISIONS. The rulings of a court of final appellate jurisdiction in a given case become the law of the case in all future trials.

2. **Fire Insurance:** FORFEITURE OF POLICY BY INCUMBRANCE OF PROPERTY: SUBSEQUENT ASSIGNMENT WITH CONSENT OF COMPANY: RIGHTS OF ASSIGNEE. Where a policy of fire insurance provided, in substance, that if there was, at the time the policy was issued, or should be thereafter, an incumbrance on the property, the policy should be void; and the property was afterwards incumbered; and, while it was so incumbered, the policy was assigned to the plaintiff, and such assignment was assented to by the company without knowledge of the incumbrance, *held* that, while a new contract of insurance arose between the assignee and the company, the agreement that the policy should be void if the property was incumbered was imported into that contract, and, the property being incumbered when the new contract was made, and continuing to be so incumbered, the assignee could not recover in case of loss. *Ellis v. Council Bluffs Ins. Co.*, 64 Iowa, 507, distinguished.
BECK and REED, JJ., *dissenting*.

*Appeal from Appanoose Circuit Court.*

WEDNESDAY, APRIL 21.

ACTION upon a policy of fire insurance issued by the defendant to E. R. Ellis & Co., assignors of the plaintiff. There was a trial to the court, and judgment was rendered for the plaintiff. The defendant appeals.

*George G. Wright* and *J. B. Johnson*, for appellant.

*Tannehill & Fee*, for appellee.

ADAMS, CH. J.—I. This case is before us upon a second appeal. The first opinion is reported in 61 Iowa, 577. The question raised in that case was as to whether the court erred in excluding evidence offered by the defendant of a mortgage upon the property, placed upon it by the plaintiff's assignors, and remaining until after the loss. This court held that the

evidence should have been admitted. The ruling was based upon the fact that the policy provided that " if the title of the property is   *   *   *   incumbered,   *   *   *   this policy shall be void;" and it was held that a mortgage would be an incumbrance of the title, and would, according to the terms of the policy, render it void. Upon the second trial the evidence was admitted, and showed conclusively that there was a mortgage upon the property, placed upon it by the plaintiff's assignors, and remaining until after the loss. The plaintiff contends, however, that the policy is not void. He calls our attention to the fact that the plaintiff holds the policy by assignment with the assent of the company, and that the mortgage was not executed by himself, but his assignors. His position is that he should not be affected by their act, because when the policy was assigned a new contract arose, and nothing has since occurred to avoid the policy.

The fact of the assignment with the assent of the company appeared upon the former trial. If it should have the effect which the plaintiff contends that it should have, then the court, upon the former trial, was correct in excluding the evidence of the mortgage, because it was immaterial whether the plaintiff's assignors had executed a mortgage or not. Evidence which we held was wrongly excluded we are now asked to virtually hold was rightly excluded, and we are asked to hold this, not by reason of any new fact which is put into the case, but by reason of a new legal position taken by the plaintiff's counsel. We are asked to virtually hold that the evidence was rightly excluded, in contravention of our former ruling, because the plaintiff's counsel have devised a better argument for excluding it.

1. APPEAL to supreme court: force of decisions.

It is true that upon the last trial the evidence was admitted, but the court, in rendering judgment for the plaintiff, refused to give effect to it, and might as well have excluded it. It is well settled that the rulings of a court of final appellate

jurisdiction in a given case become the law of the case in all future trials. The defendant contends that that rule should be applied here, though the precise reason now urged for excluding the evidence, or, what is the same thing, for refusing to give effect to it, was not urged before.

The question presented is not entirely free from difficulty. Possibly, if it were necessary to rule upon it, we might feel constrained to sustain the defendant; but we have to say that it appears to us that the additional reason now urged by the plaintiff for regarding the evidence of the mortgage as immaterial is as unsound as the one before urged. The plaintiff's position is that, notwithstanding the provision of the policy that it shall be void if there is an incumbrance upon the property, it shall not be void in the hands of an assignee, if the company assents to the assignment. This position is based upon the idea that at the time of the assignment a new contract arose. It may be conceded that in a certain sense a new contract arose. It could not be otherwise where a new party is introduced. But that is not a material consideration. What we have to determine is, what the new contract was, and whether, under such contract, the plaintiff is entitled to recover.

2. FIRE insurance : forfeiture of policy by incumbrance of property: subsequent assignment with consent of company: rights of assignee.

When the plaintiff took an assignment of the policy, all its terms and conditions were imported into the new contract, and it became one of the conditions of the new contract that "if the title to the property is   *    *    *   incumbered *    *    *   this policy shall be void." The plaintiff, as assignee of the policy, became a party to such condition, just as essentially as his assignors did when the policy was first issued. The condition pertained to the character of the risk as it then was or should be thereafter. The parties originally insured virtually agreed that if there was, at the time the policy was issued, or should be thereafter, an incumbrance upon the property, they should not, in case of loss, be entitled to recover. This was the construction placed upon

the condition at the former hearing, and it is undoubtedly correct. When the plaintiff, as assignee of the policy, became a party to the condition, he virtually agreed that if there was then, or should thereafter be, an incumbrance upon the property, he should not, in case of loss, be entitled to recover. We do not say that the mere act of the parties originally insured, in casting an incumbrance upon the property, vitiated it in the hands of the assignee. He did not agree that his assignors had not incumbered the property. His agreement was that it was not *then* incumbered, and should not be during the remaining life of the policy. If the policy had not been assigned, and the action had been brought by the parties originally insured, their mere act in casting an incumbrance upon the property would undoubtedly have constituted a good defense. But as against the assignee the defense is not based solely upon that. The gist of the defense is that the incumbrance was allowed *to remain*, and affect the risk under the new contract. If it had been removed before or at the time of the commencement of the new contract, the case would undoubtedly have been different. The assignee could not be regarded as agreeing as to what the risk had been theretofore, but as to what it was then, and should be from that time forward. The company had been paid for carrying a risk upon unincumbered property. The premium, we may presume, had been graduated accordingly. The same rate continued. From the commencement of the new contract the company was bound to carry that risk, and only that.

The plaintiff relies upon *Ellis v. Council Bluffs Ins. Co.*, 64 Iowa, 507. It was held in that case that where a new contract arises by reason of the assignment of a policy of insurance, the assignee is not affected by the acts of the assignor. While we see no reason to change our view as expressed in that case, the doctrine should not be understood as having the scope for which the plaintiff contends. In that case the defendant set up a fraudulent statement as made by the insured at the time he made his application for the insur-

ance. Now, as a new contract arose, which new contract was not obtained by fraud, it was thought that it should not be held to be void. The assignee was not only not guilty of any fraud, but could not be presumed to have knowledge of the assignor's fraud, nor to be in fault for want of knowledge of it. Besides, in that case, there was nothing tending to show that the risk *at the time of the assignment* was greater than the company undertook to carry. The fraud set up was that there was a false statement in respect to the property being free from incumbrance. But there was nothing tending to show that at the time of the assignment, at which time the new contract arose, the property was not free from incumbrance. The case is not different in principle from one where there is a promissory warranty against a specified use. A breach of the warranty arising from a prohibited use which had been discontinued before assignment, and not longer affecting the risk, should not be held to vitiate the policy in the hands of the assignee, under the new contract. It is true, the terms of the policy, including the promissory warranty against the specified use, should be regarded as forming a part of the new contract; but, then, the promissory warranty, after the new contract arises, is merely that of the assignee, and if he is not guilty of a breach of it, the new contract is not forfeited. So, too, there is another class of cases where the act complained of is the act of the assignor, done after the assignment. Of this class is *Foster v. Equitable Mut. Fire Ins. Co.*, 2 Gray, 216. The assignor's act, done after the new contract arose, could not be deemed a breach of the new contract, for reasons too obvious to require any discussion.

In the case at bar, what is complained of is a subsisting incumbrance, and that was provided against as much by the new contract as by the old. The assignee became a party to the stipulation or condition that there should be no incumbrance upon the property. The breach, then, which forfeits the contract is his breach. If the incumbrance had been removed before assignment, so that there was nothing to com-

plain of except the act of the assignor, which had spent its force and had become inoperative as affecting the risk under the new contract, the case would have fallen under the rule as recognized in *Ellis v. Council Bluffs Ins. Co.*, above cited.

The plaintiff has much to say about a waiver. He contends that the company, by consenting to the assignment, should be held to have waived, not only the forfeiture caused by the act of the assignor in placing the incumbrance upon the property, but should be held to have waived the incumbrance itself as a subsisting incumbrance, which, more properly stated, would be a waiver of one of the provisions of the new contract. It is not necessary to set out all the objections which might be urged to this position. If the provision against a subsisting incumbrance was waived, then all similar provisions were waived. It may be conceded that if the company received any new consideration with knowledge of a forfeiture, that would be a waiver of the forfeiture. No insurance company should take the money of the insured if at the same time it intends to repudiate the policy. It is a familiar doctrine that the receipt of a premium after knowledge of a forfeiture is a waiver of the forfeiture. But there is no pretense that the company had knowledge of the incumbrance. The most that is claimed is that, when the company was applied to for its consent to the assignment, the company should have ascertained whether there was an incumbrance or not before consenting to the assignment. But, in our opinion, there is no warrant for holding such rule, and it would unquestionably work great mischief if we should hold it. The defendant probably does business in every county in Iowa. It is not practicable for it to ascertain what incumbrances exist upon all insured property, recorded and unrecorded.

The plaintiff endeavors to base an argument upon the alleged fact that the company received a consideration for its consent; but the fact is otherwise. It is said that by reason

of the consent the company was allowed to retain the unearned premium; but the unearned premium had already been forfeited.

The plaintiff has something to say about the fraud of the defendant in making this defense, but he knows very well that he is seeking to impose upon the defendant a liability for a risk greater than it ever consciously assumed, and greater than it was ever paid for.

We think that the judgment must be

REVERSED.

BECK, J., *dissenting.*—In my opinion, the defendant in this case cannot set up, as a defense to the action brought by the assignee of the policy, the fact that the property insured was incumbered by mortgage executed by the assignor of the policy,—the party originally insured. I base my conclusion upon these grounds:

I. It is a rule, supported by authority, that the assignment of a policy creates between the underwriter and assignee a new contract, which is not affected prejudicially by acts of the party to whom the policy was issued. Under this rule, the acts of such party do not forfeit the conditions of the policy in the hands of an assignee, when such acts would have that effect had the policy not been assigned. *Ellis v. Council Bluffs Ins. Co.,* 64 Iowa, 507; *Foster v. Insurance Co.,* 2 Gray, 216; *City Fire Ins. Co. v. Mark,* 45 Ill., 482. Counsel for defendant cite, in opposition to the rule, *Ellis v. State Ins. Co.,* 61 Iowa, 577. They insist that, because the opinion in that case shows that the policy was assigned, and yet holds that evidence of an incumbrance put upon the property by the assignor, the original assured, was erroneously excluded, the decision is in conflict with the rule. But this point was not in the case, and the rule was not brought in question or referred to in the opinion. It seems that the evidence was objected to only upon the ground that the conditions of the policy provided against the transfer or change of the title of

the property, and that the mortgage sought to be introduced in evidence did not incumber the title, but was nothing more than a lien upon the property. The rule under consideration is not questioned or referred to in the opinion. The decision cannot be cited as in conflict with it.

The rule is supported by the following cogent reasons: The assignee, being ignorant of the existence of the ground of forfeiture, perpetrated no fraud upon the underwriter, and practiced no deceit or concealment. He sought indemnity against loss by fire, which it is the business of the insurance company to give. He could have caused the policy to be canceled, and a new one to be issued, the return premium being paid by the company. In order to avoid labor and inconvenience to the company, this course was not pursued, but the policy was assigned, from which the assignee expected to obtain the indemnity sought. He was ignorant of any ground upon which the policy could be invalidated. It may be that the underwriter was also ignorant; but he had it in his power to discover the existence of anything which would defeat the policy. Without pursuing a course of inquiry which would have resulted in disclosing the ground of invalidity of the policy, he treated it as valid, and by his action induced the assignee to rely upon it as indemnity. But it may be said that the assignee, as well as the underwriter, could have made the inquiry as to the validity of the policy. That is true, but there is no reason why he should have pursued such inquiries after finding that the underwriter treated the policy as valid.

It must be remembered that an assignment is not valid except the assent thereto of the company issuing the policy is given through its agent or otherwise. When such assent is given, the policy becomes a contract with the assignee. He is authorized to believe that the insurance company, in thus entering into a contract with him by virtue of the assignment, binds itself to afford the indemnity he seeks. It cannot, therefore, set up as a defense to the policy any cause of inva-

lidity existing before the assignment, in the absence of fraud, deceit or concealment on the part of the assignee.

II.　It becomes necessary to inquire whether the fact that neither the defendant nor its agent had knowledge of the incumbrance existing at the time of the assignment of the policy takes the case from the operation of this rule. It may be remarked, preliminary to the consideration of this question, that, as the plaintiff, the assignee of the policy, had no knowledge of the incumbrance, the case would not be withdrawn from the rule on the ground of fraud on the part of plaintiff, if it otherwise is applicable to the case. The rule recognizes the assignment of a policy as creating a new contract. By this is meant that a new contract of insurance arises upon the execution of the assignment. The company contracts with a new party. The underwriter is the same in the new as in the old contract, but the insured in the two contracts is not the same. The subject of the insurance—the property covered by the policy—is the same in both contracts; and it is very plain that the terms of the two contracts are the same, being expressed in each case by the policy. We think upon these points there can be no doubt.

It cannot be doubted that a violation of the conditions of the policy which would render it void in the hands of the party originally insured would not defeat the new contract— the new policy, for it may be so called—which arises upon the assignment of the instrument. The assignment creates a new contract. It would be absurd to say that such new contract is rendered void by an act done before it was made. If that were so, it would never exist as a contract; the instant the assignment would be made the new contract would be destroyed. It would be still-born; indeed, it would never have an embryo existence. But the law contemplates that the company, by assenting to the assignment, revives the policy which has been avoided by prior acts; or, more properly, it enters into a new contract, which is expressed by the language of the old and void policy. The old contract, being

void, passed away; the new one is called into existence, and clothed with the drapery of words formed for the old one. In plainer language, the parties, in entering into the new contract, adopted the language of the old. Strictly, there was no waiver of forfeiture of the policy by the assignment. It may be regarded as void, as between the original parties. As between the company and assignee, it was used to express the new contract.

I will now proceed to apply these doctrines to the facts of the case before me. The incumbrance fell upon the property after the policy was originally executed. Under the condition of the instrument it became void. That condition is in this language: " If the title of the property is transferred, incumbered or changed," the policy shall be void. Under this condition, the policy, when the incumbrance was put upon the property, became void. It will be observed that this condition is not against prior or existing incumbrances. It is against future incumbrances. The new contract of insurance between the company and the assignee would not be avoided by an existing incumbrance. Only an incumbrance that should fall on the property after the assignment creating the new contract would have such effect. It therefore clearly appears that the contract of insurance existing between defendant and the plaintiff is not affected by the incumbrances.

III. It does not appear from the record that the application for insurance by the assignor of the policy contained any representation as to the non-existence of incumbrances. We need not, therefore, inquire what effect such representations would have upon the contract with the assignee. It would seem, however, that if there were such representations by the assignor, they could not affect the new contract of insurance with the assignee for at least two reasons: (1) The representations, if made, were true, for the incumbrance fell on the property after the policy was originally executed; (2) the assignee, in entering into the new contract, made no representations of the

non-existence of incumbrances.   The covenant against exist-
ing incumbrances was not violated by the assignor, and was
not entered into by the assignee.   If there was, in fact, such a
covenant in the application, it does not affect the policy in
the hands of the assignee.

The foregoing considerations lead me to the conclusion that
the judgment of the circuit court ought to be affirmed.

REED, J., concurs in this dissent.