HENRY BORN, Appellant, v. HOME INSURANCE COMPANY OF
NEW YORK.

**Insurance:** NOTICE OF FORFEITURE. Laws Eighteenth General As-
sembly, Chapter 210, provides that an insurer may give notice
to insured of maturity of a premium, or installment thereof,
which shall state the amount due or to become due, and the
amount required to pay customary short rates and expenses in
order to cancel the policy, which insurer shall not forfeit for fail-
ure to pay the same until thirty days after such notice was served.
1 *Held*, that a notice by insurer, who had issued two policies to
one person, stating the aggregate amount required to cancel both
policies and the amount of premiums due under the note given
for the unpaid premiums on both policies, but not stating the
amount for canceling each, etc., was insufficient to suspend one
of them.

**Construction of Policy.** The fact that assured attached a diagram to
his application for insurance, which designated certain premises
as owned by the assured in fee, and described them as "vacant,
2 unoccupied, and uninhabited," did not render a forfeiture clause
against mortgaging the property applicable to the real estate
alone, where the policy covered both real and personal prop-
erty.

MORTGAGE CLAUSE: *Forfeiture.* A policy insuring both real and
personal property provided, that if "the property should there-
2 after become mortgaged or incumbered," the policy should be
void, and also declared that it should be forfeited if other insur-
3 ance was taken out "on *any* of said property." *Held*, that since
the provision for forfeiture for mortgaging did not provide a
forfeiture for mortgaging "any" of the property, but treated "the
property" as a whole, the policy would not be forfeited for a
mortgage given on part of the property only.

*Payment of mortgage before loss.* Where a policy on property pro-
vided a forfeiture for mortgaging it without the company's con-
sent, and assured did mortgage a portion of the property, but,
4 before loss, paid the incumbrances, such payment operated to re-
store the property to the protection of the policy, and hence
plaintiff was entitled to recover for the loss thereof.

*Appeal from Cedar District Court.*—HON. M. J. WADE,
Judge.

. SATURDAY, JANUARY 27, 1900.

ACTION to recover upon a policy of insurance against loss by fire. The defenses relied upon are that the policy had been suspended before the loss, for nonpayment of the premium, and that the policy was rendered void by the execution of chattel mortgages upon personal property covered by the policy, without the knowledge or consent of the defendant. At the close of all the testimony each party moved for a verdict. The motion of the plaintiff was overruled, and the motion of the defendant sustained, and verdict and judgment rendered accordingly. Plaintiff appeals.—*Reversed.*

*W. G. W. Geiger* and *Smith, Kirk & Smith* for appellant.

*Thos. A. Cheshire, McVey & McVey,* and *E. M. Brink* for appellee.

GIVEN, J.—I. The defendant issued to the plaintiff its two policies of insurance on certain real and personal property, each running from May 22, 1893, to May 22, 1896; the one in suit, being No. G. F. 94,403, insuring against loss by fire or lightning, and the other, A 36,125, against loss by tornado, cyclone, or wind storm. In consideration of this insurance the plaintiff paid to defendant eight dollars in cash on account of premium on the fire policy, and executed and delivered his one promissory note for sixty-six dollars, payable on or before the first day of May, 1894, "in payment of the premium of policy No. G. F. 94,403, A 36,125." On the twenty-fourth day of March, 1894, the defendant mailed, by registered letter, notice, under chapter 210, Laws Eighteenth General Assembly, to the plaintiff, which he received on the second day of April, 1894. On the eleventh day of March, 1895, the plaintiff's barn and part of the personal property covered by the fire policy was destroyed by fire. Plaintiff made no response to the notice by registered letter, and has

never paid any part of said promissory note, and defendant's contention is that by reason thereof the policy sued upon became and was suspended long before the loss occurred. Plaintiff insists'that said notice was not as required by said chapter 210, in that it did not designate the amount to be paid on account of the policy in suit, or state the customary short rates thereon. The notice informed the plaintiff that "your note for insurance under Policy No. G. F. 94,403, A 36,125, falls due on the first day of May, 1894;" that the amount of the note was sixty-six dollars, amount of interest, four dollars and eighty-four cents,—total, seventy dollars and eighty-four cents; also, that "the amount required to cancel your contract; in case you so elect, is forty dollars and ten cents, being our customary short rates and expenses;" and that, "unless payment is made within thirty days, your policy will be suspended." These amounts include the entire note and the short rates thereon, and plaintiff insists that, to be valid, it should have included that part of the note given for premium on the policy in suit, and the short rates on that amount. Defendant contends that the note was a single transaction, and that it was its privilege "to suspend this note; not half of it, but all of it." This contention is answered in *Smith v. Insurance Co.*, 108 Iowa, 382. The only distinction between that case and this is that in it two notes were executed for the aggregate premium to be paid, while in this there was but one. Following that case, we hold that the notice was insufficient to entitle the defendant to cancel the policy in suit.

II. The policy sued upon insures the plaintiff to the amount of four thousand dollars, as follows: Four hundred dollars on dwelling house; two hundred dollars on contents; six hundred dollars on barn and sheds attached, marked "No. 1" on diagram; barn and shed marked "No. 2" on diagram, harness, etc.; two hundred dollars on farm implements, granary, and crib; four hundred dollars on grain;

two hundred dollars on hay; seven hundred and fifty dollars on horses, mules, and colts; nine hundred dollars on cattle; fifty dollars on sheep; and three hundred dollars on hogs. The barns and a considerable portion of this personal property were destroyed by fire. The plaintiff gave several chattel mortgages on parts of this personal property without the knowledge or consent of the defendant, wherefore the defendant claimed that there was a forfeiture of the entire policy. The plaintiff insists that the forfeiture clause only relates to the real estate; that, if it relates to both, he had the right to sell the personal property; that mortgaging was one form of selling; and that, if these positions are not tenable, still he is entitled to recover the value of the barn and other property that was not mortgaged or incumbered. We must look to the terms of this policy to see whether, notwithstanding the premium is a gross sum, it does not limit forfeiture on account of mortgaging to the mortgaging of all of the property. The policy contains the following: "This indemnity contract is based upon the valuations and representations contained in the assured's application and diagram of even number herewith, which the assured has signed, and permitted to be submitted to the company, and which are hereby made a warranty, and a part thereof; and it is stipulated and agreed that, if any false statements are made in said application or otherwise; or if the assured, without written consent thereon, has now or shall hereafter procure, any other contract of insurance, whether valid or not, on any of said property; or if the property shall hereafter become mortgaged or incumbered; or upon the commencement of foreclosure proceedings; or in any case any change shall take place in title or possession (except by succession by reason of the death of the assured) of the property herein named; or if the assured shall not be the sole and unconditional owner in fee of said property; or if this policy shall be assigned without written consent thereon; or if the premises described shall be occupied for other than

farm purposes; or if they are now vacant, unoccupied, or uninhabited, or shall become vacant, unoccupied, or uninhabited, without written consent hereon,—then, in each and every one of the above cases, this policy shall be null and void." The plaintiff relies upon the words "diagram," "owner in fee," "premises described," "vacant, unoccupied, and uninhabited," as showing that the forfeiture clause only relates to the real estate. Surely, these words are not applicable to the personal property, but it does not follow that the clause against mortgaging does not apply to both. It is general, and alike applicable to the personal and real property, and its application should not be restricted simply because of the use of words only applicable to one. It is a familiar rule that forfeitures are not favored, that contracts will be strictly construed to avoid forfeitures, and that the burden is upon him who claims a forfeiture to clearly show that he is entitled to it. The language of the policy is, "or if the property shall hereafter become mortgaged or incumbered" the policy becomes null and void. It is the property, not a part of it; not the real nor the personal, but the whole, property, the mortgaging of which renders the policy void. That the words "the property" were intended to include all the property is indicated in what immediately precedes as to other insurance "on any of said property." The use of "the" in the one instance and "any" in the other surely indicates an intention to express something different and the same is true as to the use of the word "any" in respect to change in title or possession. "The property" is without qualification, and we think must be held to refer to all the property insured, and therefore mortgaging or incumbering a part of it did not work a forfeiture of the entire policy. *Quarrier v. Insurance Co.,* 10 W. Va. 509; *Bailey v. Insurance Co.,* 16 Hun. 503; May, Insurance, section 278; *Insurance Co. v. Spankneble,* 52 Ill. 55. Counsel have discussed at length, and with numerous citations, whether this contract of insurance is divisible; but, as we

view the record, this question is not involved. Our con-
clusion is that the contract was not forfeited by a failure to
pay the premium because of the insufficiency of the notice,
or by giving the mortgages on part of the chattels, because
of the language of the policy.

III.    It appears that all of the chattel mortgages given
by the plaintiff on the insured property were paid off before
the fire, except a part of the one to Porter on eight cows and
two horses. We are unable to determine from the record
whether any of this property was destroyed, and it is not
important that we should, as plaintiff's counsel do not claim
the right to recover therefor. They say in argument:
"Remember, we do not claim to recover for any of the prop-
erty that was covered by the chattel mortgage, although it
was destroyed; our contention being that, the moment the
mortgage was placed upon it, and whilst it remained upon
it, it was the same as property sold, and out of plain-
tiff's possession." A part, at least, of the chattels cov-
ered by the mortgage that had been paid off was
destroyed, and for this the plaintiff asks to recover. We have
seen that giving those mortgages did not render the policy
void, hence the plaintiff had a valid policy covering all the
property insured therein. It is conceded that giving the
mortgages withdrew the mortgaged property from the pro-
tection of the policy during the life of the mortgages, and
the contention is whether, by a satisfaction of the mortgages
that were paid off, the property therein described was
restored to the protection of the policy. The theory upon
which an existing mortgage is held to be a violation of a
clause in the policy against an increase of risk is that it does
increase the risk. *Ellis v. Insurance Co.,* 61 Iowa, 577;
*Lee v. Insurance Co.,* 79 Iowa, 379. In this case increase
of risk is not pleaded as a defense, nor does it appear that
the policy contained a provision against such an increase. If
such a provision should be implied, its violation would only
suspend the policy as to the property upon which the risk

was increased during the time thereof.   If the plaintiff had violated the terms of the policy by changing the location of his kitchen stove in the building insured, or by leaving the premises unoccupied, and had afterwards, and before loss, replaced the stove or reoccupied the premises, such violation would only be held to have suspended the policy during the period for which it was violated; and, if the property was in the condition and occupancy required by the policy, at the time of the loss, such suspension would be no defense.   See 1 May, Insurance (3d ed.), section 101, and cases cited; 2 Am & Eng. Enc. Law, 288, and note.   At the time of the loss the personal property in question was in the possession and ownership of the plaintiff, free from the incumbrances of the mortgages, and covered by his valid policy of insurance.   Therefore he is entitled to recover for the loss thereof. See, as directly in point, *Wilkins v. Insurance Co.,* 30 Ohio St. 317.   It follows from these conclusions that the court erred in sustaining defendant's motion for a verdict.— Reversed.

Granger, C. J., not sitting.