[L. A. No. 7570. In Bank.—December 23, 1926.]

HARRY SISKIN, etc., Respondent, v. ALLIANCE INSUR-
ANCE COMPANY OF PHILADELPHIA, Appellant.

HARRY SISKIN, etc., Respondent, v. THE NETHER-
LANDS FIRE AND LIFE INSURANCE COMPANY
OF THE HAGUE, HOLLAND, Appellant.

HARRY SISKIN, etc., Respondent, v. NIAGARA FIRE
INSURANCE COMPANY OF NEW YORK, Appel-
lant.

[1] Fire Insurance—Construction of Policies—Ambiguity—Evi-
dence.—In actions upon fire insurance policies, in which the terms
of the covering clauses are ambiguous, interpretation of such
clauses may be aided by the circumstances attending the issuance
of the policies.

[2] Id.—Rule of Construction.—Where the agents who conducted the
preliminary interviews with the insured were the agents of the
insurers, and not of the insured, the terms of the covering clauses
in the policies, which are ambiguous, are to be construed liberally
in favor of the insured and strictly against the insurer, by
reason of the fact that whatever ambiguity or uncertainty exists
therein was caused by the insurer.

[3] Id.—Covering Clause—Property Covered.—By the use of the
word "rear" or of the clause "in the rear" in fire insurance
policies, in describing merchandise and materials in a building, it
must be held that it was the intention of the framers of the
policies to refer merely to the location of the property to be
covered by the insurance at the date of the issuance of the
policies, and by the use of the term "additions adjoining and
communicating," it was intended that the coverage clauses should
apply to such stock of merchandise wherever situated in the in-
sured's plant in the course of its progressive movement therein
during the processes of manufacture.

[4] Id.—Construction of Policy.—Where an insured had for several
years carried blanket insurance on the stock of merchandise in
his manufacturing plant, and, in interviews held prior to the is-
suance of new policies, had been informed by the insurers' repre-
sentatives, who were familiar with his place of business and
manufacturing activities, that the board of fire underwriters had

1.  See 14 Cal. Jur. 452; 14 R. C. L. 938.
2.  See 14 Cal. Jur. 443; 14 R. C. L. 926.

notified the insurers not to issue policies of insurance in blanket form unless the insured would accept the insertion of a ninety per cent co-insurance clause in the policy, which the insured refused to consent to, and the new policies were written with blanket insurance and no requirement of co-insurance, the policies must be interpreted to cover the insured's stock wherever the same was to be placed in the "additions adjoining and communicating" with the plant during the course of manufacture.

---

(1) 26 C. J., p. 78, n. 60.    (2) 26 C. J., p. 72, n. 19, p. 74, n. 23, p. 75, n. 28, p. 94, n. 26.    (3) 26 C. J., p. 94, n. 28, p. 95, n. 29. (4) 26 C. J., p. 95, n. 30.

APPEALS from a judgment of the Superior Court of Los Angeles County. Charles Welborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Chickering & Gregory, Gibson, Dunn & Crutcher, H. F. Prince and E. H. Conley for Appellants.

Paul H. McPherrin and L. Frank Ottofy for Respondent.

RICHARDS, J.—The three cases, the appeal in each of which is before this court for determination, were consolidated and tried together upon an agreed statement of facts and certain other forms of evidence presented at such trial. Each of these actions was brought by plaintiff, doing business under the name of the Angelus Furniture Manufacturing Company, for the recovery of a sum of money alleged to be due by the defendant in each case according to the terms of an insurance policy and as the result of a fire which occurred in the plaintiff's premises. The question presented in each case involves an interpretation of the covering clause in each of these insurance policies. From the stipulated facts in the case and from the findings of the court based thereon it appears that the plaintiff at the time of the issuance to him of each of said policies, and for several years prior thereto, had been engaged in the business of manufacturing furniture in the premises wherein the stock of merchandise and material covered by each of said policies was located at the time of the issuance thereof and of the occurrence of the fire. The building wherein the plaintiff's said business was originally conducted was a two-story brick

building situate in the city of Los Angeles, between Stanford Avenue and Paloma Street, and described as Nos. 935–943 East Pico Street. Some years, however, before the issuance of these insurance policies the plaintiff had found that the increase in his business required the erection of an additional building and he had accordingly caused the same to be erected immediately adjacent to the former structure and as a part thereof, to the extent that the west wall of the earlier building formed, to the height thereof, the east wall of the added structure, and that through said common wall large openings, supplied with metal doors, were so placed as to furnish such full and adequate means of intercommunication as the convenience or necessities of the increasing business of the plaintiff required. The various departments of the manufacturing plant were so located in different parts of his amplified building that the raw materials to be used in the process of manufacture would be located in the rear of the older unit and would pass therefrom during the progressive processes of manufacture through the various portions of the amplified structure, until it was finally placed as a finished product in the storeroom thereof, from whence it passed out to the trade. For several years prior to the issuance of the policies here in question the plaintiff had carried insurance upon the large stock of materials and merchandise which were thus in process of manufacture, and the defendant in each of these cases had been among the number of insurance companies with whom his insurance policies had been placed. On October 14, 1920, when the insurance policy which he had theretofore carried with the Alliance Insurance Company of Philadelphia was about to expire, the authorized agents of said insurance company applied to the plaintiff for a renewal of said policy, and as the result of interviews between the agents of said company and the plaintiff the insurance policy which forms the basis of the action against said insurance company was issued and the agreed premium paid thereon. On April 28, 1920, a similar transaction occurred with relation to the insurance theretofore carried by the Niagara Fire Insurance Company of New York, and as a result thereof a similar policy was issued and the agreed premium paid thereon. On July 20, 1920, a like transaction occurred with relation to the insurance theretofore carried by the Netherlands Fire and Life Insur-

ance Company of the Hague, Holland, and with the result
that a like insurance policy was issued and the agreed
premium paid thereon. Each of these insurance policies was
in the standard form and in each of them the covering clause
was substantially the same, reading as follows: "On stock
of merchandise and materials . . . [describing same] all
while contained in or attached to the two-story brick building
and its additions, adjoining and communicating, situate Nos.
931-937, 929-933 rear East Pico Street." It is conceded
that the stock of merchandise described in each of these
policies was destroyed or damaged by the fire which occurred
subsequently on March 18, 1921, within the plaintiff's above-
described premises; and it is also conceded that the loss and
damage resulting to plaintiff from said fire was duly ascer-
tained and agreed upon between the parties, as set forth
in the agreed statement of facts; thus leaving as the only
matter for determination the respective proportions of said
loss to be borne by each of said insurance corporations, de-
pending upon the interpretation to be placed upon the afore-
said covering clause in each of said policies. [1] It was
assumed by the respective parties to each of these actions
upon the trial and also upon appeal that the terms of said
covering clause are ambiguous and hence are to be aided as
to the interpretation thereof by the circumstances attending
the issuance of said policies. Accordingly, upon the trial
of said actions certain affidavits which had theretofore been
made by the persons who had acted as the agents of each
of said insurers in the interviews with said plaintiff prepara-
tory to the issuance of said policies and in the preparation
and issuance thereof pursuant to such interviews were
offered in evidence under the stipulation of the parties that
they were to be considered as having the same effect as
though the affiants had been present and testified to the facts
therein stated. Upon the trial of said consolidated actions,
as well as upon this appeal, the sole question which was and
is presented for determination is as to whether the aforesaid
covering clause in each of said policies amounted to blanket
insurance upon the stock of merchandise described therein
wherever situate in the premises of plaintiff at the time of
the destruction thereof in said fire, or whether the said cover-
age was limited to the unit or section of said building desig-

nated as the rear thereof and to the portion of the stock of merchandise situate therein at the date of the fire.

[2] Before entering upon a consideration of the precise terms of the covering clause in each of said policies, certain principles of interpretation applicable to contracts of the character of those sued upon herein should be adverted to. It is a conceded fact herein that the insurance brokers or agents who conducted the preliminary interviews with the plaintiff herein prior to the issuance of each of said policies were the duly authorized agents of the respective insurance companies represented by each of them in said interviews and that they were in no degree agents or representatives of the plaintiff in the procurement and issuance of said policies or in the preparation or inclusion therein of the terms of the covering clause in each which is presented for interpretation upon these appeals. This being so, it is a well-settled rule of interpretation that the terms of said clause in said policies are to be construed liberally in favor of the insured and strictly against the insurer, and this by reason of the fact that whatever ambiguity or uncertainty exists therein has been caused by the insurer. (*Mah See* v. *North Am. Acc. Ins. Co.*, 190 Cal. 424 [26 A. L. R. 123, 213 Pac. 42]; *Maryland Casualty Co.* v. *Industrial Acc. Com.*, 178 Cal. 494 [173 Pac. 993]; *Greer-Robbins Co.* v. *Insurance Co.*, 47 Cal. App. 63 [190 Pac. 189]; Civ. Code, sec. 1654; 26 Corpus Juris, pp. 74, 75, and cases cited; *Aetna Ins. Co.* v. *Sacramento-Stockton S. S. Co.*, 273 Fed. 58.) Applying the foregoing principle to the facts of these cases as embodied in the agreed statement of facts presented at the trial thereof, and considering the same without reference to the affidavits above referred to as having been also read in evidence at said trial, we are unable to distinguish the facts of these cases from those presented and considered by the district court of appeal in the case of *Greer-Robbins Co.* v. *Insurance Co., supra,* wherein that court was called upon to interpret the provisions of an insurance policy substantially the same as those embraced in the coverage clauses of the three insurance policies here under review. The precise question presented in that case was whether goods, materials, and merchandise which were located in a rear room of the plaintiff's building at the time of the issuance of the insurance

policy thereon remained covered by such insurance when removed therefrom to other portions of the plaintiff's building wherein they were located at the time of the occurrence of the fire. The insurance policy in that case referred to the property insured thereby as situate "in the rear" of plaintiff's building and purported to insure the same while contained in said building "and its additions"; and it was therein held in accordance with the rule of interpretation above set forth that by the use of the term "in the rear" the intent of the framers of the policy was merely to refer to the location of said property in said plaintiff's building at the date of the placing of the insurance thereon, and that the removal of said property to other portions of said building and its additions did not operate to take the same out of the insurance provisions of the policy. [3] Approving the rule of interpretation therein declared, we are constrained to hold that by the use of the word "rear" or of the clause "in the rear" in each of the policies here under review it was the intention of the framers thereof to refer merely to the location of the stock of merchandise to be covered by such insurance at the date of the issuance of the policies of insurance thereon, and that by the use of the term "additions adjoining and communicating" in each of said policies the framers thereof intended that the coverage clauses therein should apply to said stock of merchandise wherever situate in the plaintiff's plant in the course of its progressive movement therein during the processes of manufacture.

[4] It is, however, contended by the appellants herein that the foregoing interpretation of these policies has been rendered impossible of application by virtue of what appears in the affidavits of the insurance brokers or agents of said defendants having relation to their preliminary interviews with the plaintiff prior to the drafting of said policies, and to the form thereof and of the coverage clause placed therein as the result of such interviews. These affidavits disclose substantially the following facts, namely, that the plaintiff had for several years prior thereto carried blanket insurance upon the stock of merchandise in his plant and had placed the same through these brokers and agents of said respective defendants; that upon the occasion of said interviews held prior to the issuance of these policies the plaintiff

had been informed by the defendants' representatives, who were each thoroughly familiar with the plaintiff's place of business and with the character and nature of his manufacturing activities conducted therein, that the board of fire underwriters of Los Angeles had recently notified their respective companies not to issue policies of insurance in blanket form unless the insured would submit to and accept the insertion of a ninety per cent co-insurance clause in the policy; that the plaintiff expressed himself as opposed to the co-insurance clause plan, and that upon his expressing such opposition the agents of these respective insurance companies, being desirous of continuing to write insurance for said plaintiff, undertook to so write such insurance as to give the plaintiff the benefit of life insurance upon his said stock of merchandise, without appearing expressly so to do, in the form of the policies to be issued to him, and without the requirements of co-insurance; and that in accordance with this understanding and with such purpose in view these authorized agents of these respective defendants prepared and inserted in said policies their aforesaid coverage clauses, intending the same to have the effect of insuring the plaintiff's stock of merchandise not only while the same was located "in the rear" of his said plant, but wherever the same was to be placed in the "additions adjoining and communicating therewith" during the course of manufacture; and that in accordance with such understanding, purpose, and intent the coverage clause in each of said policies was inserted therein with the approval not only of the insurance corporations issuing the same but also of the board of fire underwriters. The effect of the foregoing statements on the part of the defendants' representatives is, in our opinion, precisely the opposite of that for which the appellants herein contend with relation to the interpretation to be placed upon the coverage clauses of said policies and which were so inserted therein not only after a thorough understanding upon their part as to what sort of insurance the plaintiff desired, but also after their express admissions that these policies were so prepared with a view to conforming to the plaintiff's said desire. If anything further were needed to justify the interpretation which the trial court placed upon the coverage clause in each of said policies in awarding the plaintiff the full relief sought, such justification was supplied by the

evidence of the defendants' agents and representatives as above set forth.  We are, therefore, of the opinion that the trial court acted correctly in so interpreting said policies as to award the plaintiff the full recovery sought thereon.

The judgment in each of said cases is affirmed.

Shenk, J., Curtis, J., Seawell, J., Waste, C. J., and Sullivan, J., concurred.